d) Given both parents' inconsistent participation in offered services, lack of consistent visitation with the children, lack of support, financial or otherwise, and failure to address the concerns that brought the children under jurisdiction, there was little likelihood the conditions could be timely remedied to allow safe return of the children to parental care.
e) This was the third time the family had been under the court's jurisdiction and the barriers to reunification in the instant matter were substantially similar to those in the previous abuse and neglect actions regarding the children. Consequently, "the parents have failed to adequately demonstrate their abilities to ameliorate their parenting skills and conduct in order to safely parent the children."
f) The parents have demonstrated a disinterest and lack of commitment to the children by failing to consistently participate in services, adjust their circumstances so that they could safely parent the children, and failing to address their substance abuse issues.
g) The children are in need of and deserve a stable and permanent home.
*25 Father's Claims
Father does not dispute that a preponderance of the evidence, viewed in the light most favorable to the judgment, supports the court's conclusion that termination of parental rights is in the children's best interests. Father suggests, however, that the court failed to base its best interest determination on the requisite "totality of the circumstances" standard. He argues that the court failed to include significant evidence in its analysis, such as Father's visitation being hampered by the parent aide and foster mother, Father's visitation being hindered by Father's shoulder surgery, and that there is no adoptive resource for the children. Father argues that the court downplayed certain evidence beneficial to Father, such as the children enjoying visits with Father, ignored other evidence, such as there being a delay in authorization of a parent aide and the parent aide canceling visits, and misinterpreted evidence, such as T.L.-07's fear of Father. Consequently, Father argues that the court erred in finding the children lacked an emotional bond to Father, erred in finding Father failed to consistently visit the children, erred in finding that Father provided minimal support to the children, erred in finding that additional services would not bring about lasting parental adjustment, and erred in finding that Father demonstrated a disinterest or lack of commitment to his children.
Addressing Father's claims as presented would require us to reweigh the trial evidence. As explained above, we cannot. Father appears to suggest that because the trial court did not acknowledge every piece of Father's evidence in the Judgment, the trial court did not consider this evidence. We find nothing in the record suggesting that the court did not consider all of the evidence as well as the totality of the circumstances. We find that a preponderance of the evidence supports the court's conclusions regarding the children's best interests.
Regarding the children's emotional bond to Father, therapist Keith Hayes had been working with all of the children for approximately a year and a half prior to trial. According to Hayes, all of the children reported witnessing physical abuse and drug use when they resided with their parents. The children reported to Hayes that visitation with their parents was sporadic. Hayes testified that the sporadic visitation negatively impacted the children, particularly T.L.-07. Hayes testified that T.L.-07 was diagnosed with post-traumatic stress disorder and this manifested in symptoms of anger and fear. T.L.-07 told Hayes that he was scared of Father. He explained to Hayes that he was scared of his father because he witnessed a physical altercation between his father and his mother, and that he smelled drugs on his father. While T.L.-07 reported a fear of Father, he would "shut down" when Hayes attempted to explore that issue further, indicating to Hayes that T.L.-07 feared to elaborate in the event his statements would get back to Father resulting in repercussions for T.L.-07. Hayes testified that the children were "ambivalent" with regard to returning to their parents. The children reported that they were in an unstable environment when residing with their parents and did not want to return to that type of setting.
Hayes reported that the children expressed a love for their parents and that they wished they could be with them, but knew that was not possible. Hayes testified that the children rarely spoke about Mother, however, as if they did not expect to see her again. Hayes testified that it is common for children in foster care to love their parents but still not want to return to the environment they were previously in *26 with their parents. Since working with the children regarding anxiety and stability, Hayes had observed progress in the children. Hayes expressed concern that the children would regress if returned to parental care if the issues that brought the children into care had not been rectified.
With regard to parental visitation, parental commitment to the children, and the anticipated success of further services, the court was not required to credit Father's testimony or weigh it equally with conflicting evidence The termination hearing was September 18, 2017. Although Father testified that he had not visited the children or submitted to drug testing since June 2017 due to shoulder surgery and an inability to leave the home, Father testified he "maybe went to church a couple of times" during that time frame. He testified that he voluntarily suspended visits with his children because he could not lift, hold, or feed his youngest child, a baby, and the Children's Division would not allow him to visit his older children separately. He testified that he had been cleared by his doctor to engage in activities in August, but that it was the fault of the Children's Division that he had no visits after being cleared. Although he claimed to be drug free since a drug test in June 2017 showed the presence of marijuana, he never submitted to testing after that date. When asked the last time he used drugs he responded, "I don't know. It's been a while."
With regard to Father's support of his children, the Children's Division testified that Father brought one sucker to a visit and gave a pair of shoes to one child. The court was not required to believe Father's testimony that he gave K.L.-05 $100, T.L.-08 $100, and K.L.-11 $60-$70 for their birthdays, or that he provided "items" at his visits. Nevertheless, Father testified to receiving $735 per month in disability beginning August 2016, as well as two years back pay in "lump sum" payments and $194 each month in food stamps. Father was residing with his grandmother at the time of trial. When asked what he spent his money on he indicated "storage" for his things, "burial plans," "living expenses," and "yes, I do give my grandmother things." Even crediting all of Father's testimony regarding support of his children, given Father's income and apparent lack of personal expenses, the court's conclusion that Father "has provided minimal support, financial or otherwise, for the children since the children were placed in alternative care in September 2015" is supported by substantial evidence.
The court's judgment reflects that the court considered the totality of the circumstances in reaching its conclusions regarding the children's best interests. While both Father and Mother argue that they are drug free and in a position to safely care for their children, the record does not support these claims. Neither parent disputed the underlying allegations that brought their children under the court's jurisdiction on three separate occasions. Both Father and Mother were using marijuana and PCP in 2007 when T.L.-07 was born.[6] The parents were given the opportunity to care for K.L.-05 and T.L.-07 in their home at that time, but essentially declined when they refused to participate in court-ordered drug treatment and continued to use drugs.[7] The children were placed in foster care approximately five months later when police found what appeared to be crack cocaine in Father's and *27 Mother's car. Father tested positive for marijuana around that same time. At the time of the termination of parental rights hearing in September 2017, K.L.-05 and T.L.-07 had spent nearly four years of their lives in foster care; T.L.-08 and K.L.-11 had spent nearly three.
Although Father testified at trial that he quit using all marijuana when he was told by Children's Services that his marijuana use "was hindering" his children, Father was on notice at least as early as August of 2007 that his marijuana use was unacceptable and considered harmful to the children. At that time the court sustained jurisdictional allegations that the children were without necessary care, custody, and support because Father "[u]ses illegal substances, including PCP and Marijuana, such that his ability to parent is severely impaired." The court included Father's 2006 drug convictions for trafficking and possession, as well as Father's positive drug tests for PCP and THC from June and early July 2007, in the jurisdictional order. On December 18, 2007, Father stipulated to the Juvenile Officer's Motion to Modify that K.L.-05 and T.L.-07 were without proper custody, support or care necessary for their well-being because the parents continued to possess and use illegal substances, including marijuana and crack cocaine, significantly impairing their ability to parent, and that Father tested positive September 4, 2007, for marijuana. Even after the children were returned to the parents in 2008, removed in 2011 for parental drug use, and returned again in 2012, both parents were still using PCP and marijuana in 2015 which caused the children to be placed again in foster care. Moreover, Father's claim that he was unaware until June of 2017 that his marijuana usage was "hindering" return of the children to his care is simply implausible.[8]
The court's findings are supported by the record and show that the court considered the totality of the circumstances in reaching its conclusions. We find no abuse of discretion in the court's determination that a preponderance of the evidence supports termination of Father's parental rights to be in the children's best interest.
Father's fourth point on appeal is denied.
Mother's Claims
Mother makes no argument that a preponderance of the evidence does not support the court's conclusion that termination of parental rights is in the children's best interest. She rests her claims that the court erred in determining termination to be in the children's best interests on the contention that the court erred in concluding that grounds for termination of her parental rights existed under Sections 211.447.5(2), 211.447.5(3), and 211.447.5(6). As we previously concluded that the court did not err in finding termination of parental rights justified under Section 211.447.5(3), we need not address Mother's fourth point further.
We find no abuse of discretion in the court's determination that a preponderance of the evidence supports termination of Mother's parental rights to be in the children's best interest.
*28 Mother's fourth point on appeal is denied.
Conclusion
We conclude that the circuit court did not err in terminating Father's and Mother's parental rights pursuant to Section 211.447.5(3). Clear, cogent, and convincing evidence supported the circuit court's Judgment that harmful conditions attributable to both parents persist, with little likelihood the conditions will be timely remedied to allow reunification with the children in the near future. Further, the circuit court did not abuse its discretion in finding termination of Father's and Mother's parental rights to be in the best interest of the children pursuant to Section 211.447.6.
We affirm the circuit court's judgment.
All concur.

Father's drug history predates 2007 as evidenced by 2006 drug convictions.

When Father was asked at trial if he completed drug court he stated, "No, I didn't. I put myself in prison, ma'am, so I - so my children could come back home."

While Father argues that his most recent drug use was for "pain management" of a 2014 arm injury and later shoulder surgery, the court was not required to accept this explanation given Father's long history of drug use prior to 2014 and Father's testimony that he turned to illegal drugs for pain management in lieu of using prescribed medication. Even if true, it would not prevent a conclusion that Father's continued illegal drug use has impaired his ability to parent and has harmed his children.